# Staunton.

## George F. Ball, Administrator v. C. B. Witten.

September 12, 1930.

Absent, Prentis, C. J., and Holt, J.

42

*William H. Werth*, for the plaintiff in error.

*R. O. Crockett*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This litigation was commenced by notice of motion for judgment, brought by George F. Ball, administrator of his deceased son, Paul Terrell Ball, against C. B. Witten and arises out of an automobile collision which resulted in

the death of Paul Terrell Ball who was, at the time, an infant five years old. The trial in the lower court resulted in a verdict in favor of the defendant Witten.

On May 5, 1929, according to the testimony of the defendant he was driving his 1929 model Ford sedan, which was being used for hire, on a highway in Baptist Valley, a section in Tazewell county. At this time he had in his automobile five passengers; two, with himself, were occupying the front seat and three occupying the rear seat. There was no other traffic on the highway. It had rained earlier in the day, but at the time the child was injured the highway was "practically dry." There is a slight descent in the highway from the crest of a small hill to the point where the child was struck by the automobile, estimated to descend thirteen feet to 400 feet in distance. The hard surface of the highway is twelve or thirteen feet wide and there are dirt shoulders on either side and from one extreme edge of the dirt shoulder to the extreme edge of the other is fifteen or sixteen feet. Beyond the dirt shoulders are small ditches which were muddy at the time. When the defendant reached the top of the small hill, he observed five children in the road, some 350 or 400 feet ahead of him. At this point he was traveling twenty to twenty-five miles per hour. He sounded his horn, applied his brakes and promptly reduced his speed to fifteen or eighteen miles per hour. When he sounded the horn the children moved out of the road, three of them, the older ones, moved to the dirt shoulder on the right and the remaining two children, one of whom was the child who was killed, went to the dirt shoulder on the left. They continued to walk, single file, with their backs to the oncoming automobile, on the dirt shoulders on the sides of the road. The distance between the children on the right and those on the left was thirteen to fifteen feet and through this space the defendant undertook to negotiate a passage between them, at a speed according to his testimony, of from fifteen to eighteen miles

per hour with his foot removed from the brake. When he had proceeded to a point about ten or fifteen feet from them, the deceased child ran, diagonally, across the road, with his back to the oncoming automobile, and collided with it at a point on the left front fender directly over the center of the left front wheel. The child received a fatal injury from this impact and died a very short time afterwards.

The defendant further testified that when he saw the child start across the road he applied his brakes and his automobile "picked up speed" and when the child collided with the automobile, he turned to the right, but that he could not turn freely either to the right or left without striking one or more of the other children. If the automobile was traveling in the center of the road, it would have been, when it reached a point opposite the children, between three and four feet from them, on either side, and if it was traveling on the right side, at that point it would have been about six feet from those on the left and one to two feet from those on the right.

Skid marks were observed, immediately after the injury to the child, beginning near the center of the road, continuing slightly to the right for twenty-five feet to the right ditch and extending for thirty-six feet in the ditch to the point where the automobile was brought to a stop.

■ The facts narrated appear from the defendant's evidence. The testimony will be considered in a light favorable to him, because we are confronted with the verdict of the jury in his favor, which is controlling on the conflicts in the testimony.

■■ During the trial the defendant was permitted to testify, notwithstanding the objection of the plaintiff, that it was "not possible" for him to have avoided the injury to the child. Whether, by the exercise of ordinary care, it was possible to have avoided the child, was the principal issue before the jury. It was an issue exclusively for the jury to decide under all of the facts and circumstances.

The jury, considering the conditions and surroundings and the defendant's testimony, as to what he did, were the sole judges as to whether it was possible for him to have avoided the child. Witnesses should not be permitted to give their opinions or conclusions as to what is, or is not possible. That should be left to the jury.

Several instructions were offered by the plaintiff and refused, others modified and given. Several were given by the court on the motion of the defendant. Four of them were not applicable to the facts.

Instruction number two was as follows: "The court instructs the jury that if they believe from the evidence that the defendant was driving his automobile in a lawful manner and without negligence, and that the injury to the deceased child could not have been avoided by any act on the part of the defendant after the danger of the deceased became reasonably apparent, then the jury must find for the defendant."

Instruction number three was as follows: "The court instructs the jury that an automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid an accident or an injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice; and whether he used reasonable care under the circumstances is a question for the jury."

Instruction number four was as follows: "The court instructs the jury that if the action of the deceased child was such when the car was approaching and the horn blown as to indicate to a reasonably prudent man that the child realized the danger of being in the road and the child did then get out of the road, the defendant had the right to presume it would remain out of the road until its conduct was such as to indicate to a reasonably prudent man that

it was about to return to, or was likely to return to, the road."

Instruction number five was as follows: "The court further instructs the jury that in driving his automobile upon the public highway the duty upon the defendant was merely to use ordinary care at all times, having regard to the width, traffic and use of the highways and the protection of life and property."

Of course no inflexible rule, applicable alike to all cases of this kind, has been, or can, be definitely stated. It has been stated that the driver of an automobile owes the duty of ordinary or reasonable care to children on the highway, but this has been construed to mean care commensurate with the danger and probability of injury. Certainly it is true that the conduct of a child is not measured by the same rules which govern that of adults, because a child does not have the knowledge and experience to know or estimate correctly the probable consequences of his acts in a given instance. Reasonable care required of automobile drivers toward children demands that the driver consider the age, maturity and intelligence of the child. He must increase his exertions to avert injury to children. Children of tender years are entitled to a degree of care from others proportioned to their inability to foresee and avoid the perils which they may encounter. The driver must not assume that an infant only five years old will exercise proper care for its own protection; on the other hand he is charged with knowledge of the fact that a child of that age may be expected to act upon childish impulses and he should take that fact into consideration and exercise the vigilance and precaution which the circumstances demand.

Blashfield's Cyclopedia of Automobile Law, Vol. 1, 630, 631 and 632; Berry on Automobiles (6 ed.), Vol. 1, section 518; The Law of Automobiles by Vartanian, section 92; *Ratcliffe* v. *McDonald*, 123 Va. 781, 97 S. E. 307; *Morris* v. *Peyton*, 148 Va. 812, 139 S. E. 500.

Under the surroundings then existing, if the defendant desired to pass between the children when the space between them was only thirteen to fifteen feet, his obvious duty was, on approaching them, to bring his automobile under complete control and to exercise the care the danger of the situation demanded. Knowing, a sufficient interval in advance, that the children were of immature minds and could not take care of themselves; that they would likely commit some irresponsible act and that they were in a perilous position, he should have proceeded with his automobile under such control that if necessary to avoid injury, he could have brought it to a stop. If stopping was the only effectual means he had at his disposal to avoid the injury, then he should have exercised that means.

From our view of the case, instruction number two was calculated to mislead the jury. The jury were told by this instruction that if the defendant was driving his automobile in a lawful manner and without negligence and that the injury could not have been avoided by the defendant "after the danger of the deceased became reasonably apparent" then they should find for the defendant.

This instruction was not applicable to the facts and circumstances of the case because the danger must have become reasonably apparent to the defendant when he first saw the children about 350 or 400 feet in front of him. At that point he was charged with knowledge of the fact that the deceased child, acting under a childish impulse, would be just as likely to go in front of his automobile as to remain on the dirt shoulder of the road, and with this knowledge he should have proceeded with his car under such control as to be able to bring it to a stop, if necessary to avoid injury to him.

Instruction number three, which contained what is known as the "sudden emergency" doctrine, likewise does not apply to the facts and surrounding circumstances of the case. The criticism of instruction number two is appli-

cable here. It could not be said that there was a sudden emergency because the defendant was confronted with the danger of injury to the children when he first saw them. He had sufficient time and means to have avoided the injury by proceeding with the proper degree of care. If there was a sudden emergency, it was brought about by the defendant and not by the child.

Instruction number four likewise was not applicable to the case. The defendant had no right to presume that the five year old child would remain in a place of safety on the side of the road. *Ratcliffe* v. *McDonald, supra.*

Instruction number five conveyed to the jury the idea that as long as the defendant used ordinary care in driving his automobile, having regard to the width, traffic and use of the highway and the protection of life and property, that would be all that would be required of him. But it was also his duty, when he discovered the presence of the children on the road, to exercise a high degree of vigilance and to proceed with such care and caution, considering the immature years of the children and all of the other surroundings then existing, as was demanded by the situation then confronting him, and with his automobile under such control that he could bring it to a stop if necessary.

From a review of the instructions it is apparent that the court conceived the law to be the same in this case as in those cases where the driver of an automobile sees adults, in the possession of their faculties, on or near the road. What would have been the exercise of ordinary care under those conditions, might be gross negligence where there are small children similarly situated. It may be presumed that a mature person will take care of himself and not heedlessly expose himself to danger, while a child, only five years old, will manifest no judgment and prudence. The ordinary care which must be exercised towards children is naturally higher than that which must be exercised toward

adults. This distinction should have been embodied in the instructions.

The judgment of the trial court is reversed, the verdict set aside because the court improperly instructed the jury, and the case remanded for a new trial to be had in accordance with the views herein expressed.

*Reversed.*

Epes, J., concurring:

I concur in the reversal of this judgment on the ground that the instructions given should have been so modified as to tell the jury plainly that in such a case a higher degree of care is required when young children are involved than when adults are involved. But I do not concur in all that is said therein.

In my opinion, some of the language of the opinion seems, at least, to imply that it is negligence *per se* for the driver of an automobile to pass at a speed of from eighteen to twenty miles an hour, a child, five years of age, who is standing upon, or walking along the side or shoulder of the road.

There seems to be a tendency to permit questions relating to primary negligence on the part of a person driving an automobile which strikes a child to become confused by principles applicable to the question of the capacity of the child to be guilty of contributory negligence. The fact that a child who is too young to be guilty of contributory negligence is seen by the driver of an automobile, as he approaches, to be walking along the side of the road, and that the child was injured by the automobile when he darted in front of it as it passed him, does not, without more, prove the driver guilty of negligence in injuring the child.

While it is true that a young child, of the age here involved, is deemed to be incapable of being guilty of contributory negligence, this does not make the driver of an automobile on the highway an insurer of the safety of such a child, who is walking along the side of the highway on

which he is traveling; nor does the mere fact that the driver of an automobile proceeds to pass, at from eighteen to twenty miles an hour, a young child who is standing upon or walking along the side or shoulder of the highway, without more, constitute actionable negligence.  Especially is this true in a case in which, in response to a warning signal given by the driver of the automobile, the child has left the traveled portion of the road, gone to a place of safety on the side or shoulder of the road, and has shown no evidence of returning or inclination to return to a place of danger in the road until just as the automobile is practically opposite him.