# Richmond

## HELEN HARRIS AND HUFF HARRIS v. PRINCE I. WRIGHT, ADMINISTRATOR, ETC.

January 9, 1939.

Record No. 1995.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and
Spratley, JJ.

The opinion states the case.

*A. S. Harrison, Jr.,* for the plaintiffs in error.

*L. J. Hammack,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The petitioners, Helen Harris and Huff Harris, who were defendants in the court below, challenge a judgment rendered in favor of Prince I. Wright, administrator of the

estate of Carl Allen Wright, deceased, plaintiff below. The parties will be referred to according to their respective positions in the trial court.

On the afternoon of May 23, 1937, the plaintiff's intestate, a child seven years and three months of age, was killed in a collision between a car owned by Huff Harris, and driven by his daughter, Helen Harris, and a toy wagon in which the intestate was riding along with a younger brother. The wagon was being pushed by another child, Ida Valerie Culp, who was a cousin of the decedent. The child who was killed occupied the front of the wagon and was steering it as it proceeded from the entrance to the Sam Wray place to the residence of his grandparents, located just across the highway. The children were crossing the road in response to a summons from their grandmother when the automobile collided with the wagon.

The highway upon which the accident occurred is a part of the secondary road system of Brunswick county and is sometimes referred to as the Lawrenceville-Ebony road. It runs north and south and is 22 feet wide from drain to drain. It is what is known as a dirt road and was in good condition at the time. There is a slight ascending grade within a distance of about 250 feet north of the scene of the accident. The summit or top of this grade is reached just opposite the entrance to the Sam Wray place. Traveling in a southerly direction there is also a curve to the left at this point. The highway is slightly arched or crowned, —that is, the center of the road is higher than the sides. To the east of the road is located the old Sam Wray place in which yard the children had been playing just prior to the accident. To the north of this entrance there is a low growth of shrubs and bushes from 15 to 20 inches high. To the west of the highway and just across the road is located the home of the children's grandparents, Mr. and Mrs. R. A. Wright. The yard of the Wright home slopes to the road and there are no fences enclosing either place.

The defendant, Helen Harris, was traveling south to her home in Ebony, Virginia, from Lawrenceville, at a rate of

speed estimated by her to be from 25 to 30 miles per hour. She testified that the day was clear, the road dry and that there was no traffic on the road at the time. She and her mother were the only occupants of the car.

The children were proceeding upgrade at the time of the accident. Ida Valerie Culp testified that in pushing the wagon she was running at first but when they reached the drain in the road and started to the center of the road she was walking; and that she first saw the car when it was at the ice house, a distance estimated to be 105 or 120 feet away. She said they then "tried to get away" and the deceased who held the tongue of the wagon turned the wheels to the left to avoid the car.

From the testimony of the plaintiff's witnesses the impact occurred at a point 12 feet north of the summit of the hill and 7.1 feet from the east side of the road. Thus, it is disclosed that at the time of the impact, Miss Harris was driving on the east side of the highway, that is,—her left side going in a southerly direction. There remained on her right side 14.9 feet upon which she could have driven, and immediately adjacent to the right side of the road there was an unfenced open level space of more than 100 feet in depth upon which she could have diverted her car with safety and thus avoided striking the children.

Immediately after the impact plaintiff's decedent was found "clean out of the road in the bank" on the east side. The driver of the car, according to the testimony of some of plaintiff's witnesses, proceeded a distance of 128 feet before she brought her car to a stop. There is testimony tending to show that had Miss Harris been keeping a proper lookout she could have observed the children approaching the road when she was at least 118 or 120 feet away and that if she had been driving on her right hand side of the road the impact would not likely have occurred.

██ It may be reasonably concluded from the facts viewed in a light favorable to the plaintiff that the defendant, Miss Harris, drove her car around a curve upon an ascending grade on her left-hand side of the road at a time and place

when she could neither see entirely around the curve nor over the crest of the hill. This constituted negligence.

There was a special jury in this case and they were allowed to view the scene of the accident.

The rule controlling cases of this nature is clearly and succinctly stated in Instruction Y given by the court of its own motion. It is as follows:

"The court further instructs the jury that the driver of an automobile owes the duty of reasonable care to children on the highway, and that this obligation signifies such care as is commensurate with the danger and probability of the injury to such children. The conduct of a child on its part is not to be measured by the same rules which govern that of adults, since the child is presumed to lack the knowledge and experience to know or estimate correctly the probable consequence of his acts, or the essential danger in a given instance. The reasonable care required of an automobile driver towards children demands that the driver of an automobile should consider the age, maturity, and intelligence of the child whenever the operation of such automobile involves the safety of such a child, as the age of such child may be apparent to, or discoverable by, the operator of the automobile in the exercise of ordinary care.

"You are further instructed that children of tender years are entitled to a degree of care from others proportioned to the apparent ability of such children to foresee and avoid the perils which they may encounter, if those perils are such as have become apparent to, or might have been discovered by, the operator of an automobile in the exercise of ordinary care under the circumstances. The driver of an automobile, accordingly, must not assume that an infant of the age of seven years and three months will exercise proper care for his own protection. If, therefore, you believe from a preponderance of the evidence in this case that the defendant, Helen Harris, failed to use such care, and that, in consequence of such failure, operating as the proximate cause, the child was killed, without any contributory negligence on the part of the decedent, were he

capable of contributory negligence in the opinion of the jury under the evidence, then you should find for the plaintiff and assess damages not to exceed the amount claimed in the declaration in this case."

 The trial judge, Honorable M. R. Peterson, made the following significant observation in a written opinion filed in this case:

"I may observe at this point that the Appellate Court of this State appears to have steadily grown more strict in the application of the rules regulating the operation of automobiles on the highways of the Commonwealth with reference to children. These duties may entail a marked degree of care and precaution on the part of the drivers of automobiles, but they have their basis in a solicitude for the welfare of those who are not competent to take pains for their own protection. The automobile, so it would seem, is a necessity of modern life, but it is not to be permitted to become a Moloch to whom weak and helpless innocence is to be sacrificed. Not everything must yield to consideration of dispatch and haste. Pedestrians, and even children, have a right to the use of the highways, and these rights approximate the rights of the motor vehicle.

"The roads are for the automobile. They are made straight and smooth for the automobile, but they are made also for the convenience of pedestrian traffic, including children who may necessarily have to use them."

The rule stated in the instruction is supported by the following cases: *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499; *Ball* v. *Witten,* 155 Va. 40, 154 S. E. 547; *Thress* v. *Hackler,* 155 Va. 389, 154 S. E. 502; *R. F. Trant, Inc.* v. *Upton,* 159 Va. 355, 165 S. E. 404; *Irvine* v. *Carr,* 163 Va. 662, 177 S. E. 208; and *Wash* v. *Holland,* 166 Va. 45, 183 S. E. 236.

 We are of opinion that there is sufficient evidence in the record to support the verdict and judgment. They must be sustained unless the trial court committed some prejudicial error of law.

 Exception is taken to the granting of Instruction X. The court told the jury that it was the duty of an auto-

mobile driver to exercise reasonable care and vigilance in order to discover the presence of children on the highway or in such proximity to the highway as might cause one in the exercise of ordinary care to apprehend that the child acting upon childish impulse might run into the highway in front of the approaching automobile. Objection is made to the use of the language "in order to discover the presence of children" in the highway or near by. Counsel contend that this language makes the driver an insurer of children on or near a highway. We do not concur in that view. The instruction, when read as a whole, simply told the jury that the driver must exercise reasonable care and keep a proper lookout for children. Requiring a driver to "discover" children on or near the highway means no more than to detect them or to see them. Again counsel object to the language "to provide for the safety of such children." This means that the driver must look out for them and refrain from injuring them after he sees them or should have seen them on or near the road.

Objection was made that the evidence did not warrant an instruction on the last clear chance. The evidence of the plaintiff shows that Miss Harris, the driver of the car, could have seen the children advancing to the highway when she was 120 feet away. In that distance, driving at only 30 miles an hour as testified to by her she could have stopped the car or she could have turned to the right and avoided the children and thereby "provided" for their safety. The instruction was appropriate and properly submitted the doctrine to the jury.

Twenty-one instructions were given. The defendant's counsel has objected to each of the seven instructions granted at the request of the plaintiff and to the three instructions granted by the court of its own motion.

Counsel for defendant reiterates in the petition that there was no evidence that Miss Harris was driving on her left side of the road; that it was a one track road and that she had the right to drive in the middle of it. He also frequently asserts that the evidence discloses that the chil-

dren ran into the road from a place of obscurity directly in front of the approaching car when it was only 10 to 15 feet away and that it was impossible for Miss Harris to have avoided them. There was testimony tending to support his view of the case but it was not free from substantial conflict. His theory was submitted to the jury under proper instruction and they declined to accept it. They chose to believe the evidence introduced for the plaintiff and accordingly rendered their verdict in his favor. It seems unnecessary to again repeat that the verdict has settled the conflicts in the evidence.

The jury was fully and fairly instructed. We have considered the many objections and other assignments of error urged by counsel for the defendant but we fail to find any reversible error.

*Affirmed.*