# Staunton

MAZIE WHITE, ADMINISTRATRIX OF THE ESTATE OF HARRY
LEE WHITE, DECEASED v. EDWARDS CHEVROLET
COMPANY, INCORPORATED.

September 3, 1947.

Record No. 3222.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*S. H. Sutherland* and *E. D. Vicars*, for the plaintiff in error.

*Fred B. Greear*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Harry Lee White, a colored boy of six years, while riding on a wrecking truck owned by Edwards Chevrolet Company, Incorporated, and driven by its employee, John D. Davis, fell from the vehicle and was killed. Mazie White, the administratrix of the boy's estate, sued the Edwards Company for damages for his alleged wrongful death. At the conclusion of all of the evidence the trial court being of opinion that the plaintiff had not made out a case struck the evidence, and a verdict and judgment for the defendant followed. The case is before us on a writ of error granted the administratrix.

The evidence is brief and undisputed. The Edwards Company operates a service garage at Coeburn, in Wise county. Among its employees was John D. Davis, an uncle of the decedent. While Davis was a competent driver, having operated a truck in the quartermaster corps of the Army of the United States, his driver's permit had expired and had not been renewed. His employer knew this.

In the late afternoon of April 9, 1946, Davis was directed by his employer to drive a wrecking truck from

Coeburn to Cranes Nest, a distance of about two miles, and there deliver some automobile parts.

After performing this errand, and on his way back to Coeburn, Davis deviated from the direct return route for the purpose of going by the home of his sister, Mazie White, to procure a tire for his personal car. The extent of the deviation is variously estimated at from 212 steps to 5½ city blocks.

When Davis reached his sister's house she and her three small boys, including the decedent, came out to meet him. As was to be expected, the three boys immediately climbed on the truck. Davis removed them. The two older boys obeyed his admonition, and that of their mother, and stayed clear of the vehicle. But Harry climbed on the truck again. The mother scolded him, made him get down from the truck, and directed, under the penalty of a "switching," that he go into the back yard and remain there. In obedience to this command the boy climbed down from the truck and went into the back yard, while the mother, with the two other boys, remained talking to Davis near the vehicle which was in front of the house. In the meantime Davis had gotten out of the cab and stood, for some five or ten minutes, talking to his sister near the front of the vehicle. The two older boys were near by.

Having completed the purpose of his visit, Davis got in the cab and prepared to leave. Before starting the truck he looked through the rear window to make sure that no one was on or near the rear of the vehicle. He saw no one. He started the truck and headed out toward the main highway. As the vehicle pulled away one of the boys remarked to his mother that Harry was on the truck. The mother looked up and to her consternation saw that her small son was crouched down close behind the cab.

There was no body on the rear portion of the wrecking truck. This part of the vehicle was occupied by the derrick, cables, etc., with which such vehicles are usually equipped. Just back of the cab a 12-inch plank extended

the width of the vehicle. On the central portion of this plank and immediately beneath the cab window was a small toolbox. The boy, unobserved by his mother or Davis, had returned to the truck, climbed on the rear of the vehicle, crouched down behind the cab, and thus concealed himself between the toolbox and the outer end of this plank. In this position he could not be seen from the front of the truck, where his mother and uncle were standing or from the interior of the cab.

Although the truck moved off at a moderate speed, the driver was unable to hear the cries and warnings of the mother. After the vehicle had proceeded a short distance the boy either fell from or attempted to get off the truck and was killed. At the time Davis was unaware that the boy had been on the vehicle or had been injured.

The administratrix predicates her right of recovery upon one or both of two theories. First, she says, in driving the truck after his permit had expired Davis was guilty of a breach of the statute,[1] and that in knowingly permitting him to do so, his employer, the Edwards Company, was likewise guilty of a breach.[2] Under familiar principles, she argues, the breaches of these statutes were negligence *per se*. She then concludes that such negligence was a proximate cause of the boy's death.

The trouble with this reasoning is that there is an entire lack of evidence of any causal connection between the statutory violations and the child's injury and death. There is no showing that Davis' failure to procure the renewal of his license was due to his incompetency as a driver. Indeed, as has been said, the uncontradicted evidence is that he was thoroughly competent and that his failure to have the permit renewed was due to an oversight.

[1] Michie's Code of 1942, section 2154(171), with exceptions not here material, prohibits the operation of a motor vehicle upon a highway in this State by an unlicensed driver. (Acts 1932, ch. 385, p. 776.)

[2] Michie's Code of 1942, section 2154(195), prohibits a person from authorizing or knowingly permitting a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so. (Acts 1932, ch. 385, p. 784.)

In *Southern Ry. Co.* v. *Vaughan*, 118 Va. 692, 704, 88 S. E. 305, L. R. A. 1916E, 1222, Ann. Cas. 1918D, 842, we held that the failure of a competent driver to obtain a chauffeur's license "could not by any possibility have contributed proximately to the happening" of the automobile collision complained of. See also, *Maryland Cas. Co.* v. *Hoge*, 153 Va. 204, 216, 149 S. E. 448. See generally on the subject, 1 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., section 593, p. 410 *ff.*

Next, the administratrix contends that it was at least a question for the jury whether the driver was guilty of negligence in not discovering the presence of the boy on the vehicle before starting it. It is argued that Davis knew that the boy had twice been on the truck and should have known that he might return.

We agree with the trial court that the evidence fails to show that Davis was guilty of any negligence in this respect. It is true that in a short space of time the boy had twice climbed on the truck, yet on the second occasion he had been sent away from the vehicle by his mother and had been told to stay in the back yard. According to her own testimony, "he had always been so much more obedient than the rest of the children, and was so afraid of getting a whipping, I thought no other than that he would stay around there." Neither she nor Davis saw the boy when he returned to the vehicle and secreted himself in the position which has been described.

As he got into the driver's seat in the cab, Davis saw that the other two children were near the front of the vehicle with their mother. He looked through the window of the cab and saw no one on the rear of the vehicle. As has been said, the boy had concealed himself in such a position that he was not visible to an occupant of the cab.

Davis admitted that before getting into the cab he did not walk around the vehicle and make a search to ascertain whether the child had secreted himself in some place thereon. But he was under no legal obligation to do

so. As is said in Michie's Law of Automobiles, 1938 Ed., section 96, pp. 229, 230, "A driver is under no legal obligation to make a search around and under his car lest a child too young for discretion and undirected by parents has tucked himself away in an obscure place, beyond the casual and convenient notice of the driver."

In 2 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., section 1509, p. 555, it is said: "Ordinarily a driver is not required to search for children on the running board on the far side of the vehicle, or hidden underneath or in front of it, whom he cannot see before starting."

See also, 5-6 Huddy Cyclopedia of Automobile Law, 9th Ed., section 44, p. 68; *Ostrander* v. *Armour & Co.*, 176 App. Div. 152, 161 N. Y. S. 961, 962; *Abbott* v. *Railway Exp. Agency*, C. C. A. 4, 108 F. (2d) 671, 673; *Ravey* v. *Healy*, 279 Mich. 323, 272 N. W. 692, 693, 694; *Hahn* v. *Anderson*, 123 Pa. Super. 442, 187 A. 450, 451, 452; *Williams* v. *Cohn*, 201 Iowa 1121, 206 N. W. 823, 825; *Dallas* v. *Diegal*, 184 Md. 372, 41 A. (2d) 161, 162, 163.

The conclusion we have reached makes it unnecessary that we consider whether the conduct of Davis, in calling at his sister's home for purposes of his own, was such a deviation as to suspend the relation of master and servant existing between his employer and himself.

The judgment complained of is

*Affirmed.*