# Richmond

POLLY ANN MAYNARD HALL, ADMINISTRATRIX, ETC. v. MILDRED MILES.

January 16, 1956.

Record No. 4454.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine, Howard I. Legum* and *John J. Justice*, for the plaintiff in error.

*Rixey & Rixey*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action for the death by wrongful act of Rebecca Anne Hall, an infant seventeen months of age, who died from injuries alleged to have been sustained by reason of the negligent operation of an automobile by the defendant, Mildred Miles. The jury returned a verdict for the defendant, and the trial court entered judgment accordingly. We awarded plaintiff this writ of error.

The single issue presented for our determination is whether the trial court erred in the granting and refusing of instructions to the jury.

Ten instructions were given, six at the request of plaintiff, and four at the request of defendant. Five more asked for by plaintiff were refused. Plaintiff excepted to the refusal of those five and to the granting of three of those given for the defendant.

A correct determination of the question whether the jury was fully and properly instructed depends upon a consideration of all the instructions granted, as well as those refused, germane to the issue involved. Notwithstanding this, and in violation of Rule of Court 5:1 § 6 (a) and (d), plaintiff failed to designate for printing the judgment appealed from and the six instructions granted at her request. Consequently, we have had to examine the original record to find the instructions which were given. Rule of Court 5:1 § 6 (f).[1]

We cannot too strongly urge upon counsel the necessity of com-

---

[1] *"Assumptions.* It will be assumed that the printed record and the original exhibits contain everything germane to the errors assigned, and that other parts of the record do not show that an error is harmless or that a defective instruction is cured or that other evidence supports the verdict or judgment.

"However, this Court may, at the instance of counsel or of its own motion, consider other parts of the record."

plying with the Rules of Court. Everything germane to an error assigned should be designated and printed, so that the printed record may contain everything essential to determine whether or not error has been committed. Each Justice of this Court has a copy of the printed record; but not of the original record.

While there is no assignment of error as to the sufficiency of the evidence to support the verdict of the jury, it is necessary for us to state the facts in order to determine the contention of the plaintiff with respect to the instructions. The facts stated in the light most favorable to the defendant, as they appear from the testimony and exhibits, may be summarized as follows:

Mrs. Mildred Miles lived with her husband and children at 120 North Ingleside Drive, a residential sub-division in Norfolk County. The administratrix lived with her husband and children next door at 122 North Ingleside Drive to the west of 120.

On the west side of the Miles' lot there is a private driveway from the street, North Ingleside Drive, to the door of defendant's garage. The driveway, covered with gravel, is about 8.4 feet in width and extends from the garage door approximately 30 feet to the property line of defendant fronting on the street. The street is paved only in its central portion. A plat of the immediate premises shows a ditch, wholly within the platted street, running along the edge of and parallel with the hard surfaced portion of the street. The ditch separates defendant's property line from the paved portion of the street, and directly in front of defendant's driveway it is filled up with sand to allow passage of a car from the driveway. Under the sand, at the edge of the paved portion of the street, a concrete pipe has been laid to carry the drainage under the surface. Both ditch and pipe lie outside the property line of defendant's lot, and the distance between the pipe and her property line is shown as 9.6 feet. There is no sidewalk in front of defendant's lot.

On September 17, 1953, a clear and dry day, defendant parked her stationwagon in her driveway about 12:30 p. m., and went into the house to take a nap. Linda Miles, her daughter, came home from school about 3:05 p. m., saw the child, Rebecca, in front of the Miles' home, spoke to her, and patted her on the head. The child then went towards the rear of the Hall home, next door. Linda entered her home through the front door; but did not tell her mother that she had seen the Hall child until later that evening after she had heard of the death of Rebecca.

About 3:15 p. m., Mrs. Miles, with Linda following her, came out of the front door of their home. Linda forgot to close the door and Mrs. Miles turned back and shut the door. Linda got into the stationwagon through the right door, the door next to her, and Mrs. Miles closed it. Mrs. Miles then walked around the rear of her stationwagon, entered on the left side, started the motor, and with her head out of the window, looking to the rear, slowly backed her car out of her driveway on to the hard surface portion of the street, stopped, and then went forward to the City of Norfolk. Neither Linda nor Mrs. Miles saw the Hall child or any sign of her. Mrs. Miles said that when she walked around the rear of her car, she looked to see if there was anything in the way of the car, and if there had been anything there she would have seen it; and added that she had no reason to think that the child might be out in front of the house. Neither she nor Linda felt any bump of the car indicating that they had run over something. She said she did not stop the car before entering the street, nor did she blow her horn because she "had no reason" to do so.

After transacting some business in the City of Norfolk, Mrs. Miles returned to her home about 5:00 p. m. Upon her return, she was informed of the fact that the Hall child had been picked up in the street where she had been apparently run over by someone. Linda then told her mother of seeing the child earlier that afternoon.

Three police officers assigned to investigate the accident promptly went to the Miles' home and questioned Mrs. Miles. Mrs. Miles informed them that at the time she left her home that afternoon she did not see a child anywhere in her yard or next door. They found no marks of blood on the stationwagon, nor anything else to indicate it had struck the child. They did observe that tire marks found on the child's arms and hands were identical with those made by the tires of the car, as well as with tire marks made by all tires of that particular brand.

Plaintiff, the child's mother, said that when she heard the motor of the stationwagon start on the afternoon of September 17th, 1953, she ran to the back of her home to look for her child, where she had last seen her. Not finding her there she ran to the front of her house and found the child lying face down in the sand in the street in line with the driveway to defendant's garage. Red marks were on the child's arm but she was not bleeding externally. The child was taken to a hospital, and the physicians found tire marks on the child's left and right forearms and on her clothing. They were of the opinion that

her death resulted from an internal hemorrhage, which could have been caused by the pressure of an automobile wheel upon the child's abdomen.

Leroy Hall, Jr., brother of the deceased infant, said, under cross-examination, that he saw the stationwagon in the driveway before it was backed to the street and that its rear end was approximately 10 feet from the pipe next to the paved portion of the street. Since the pipe was 9.6 feet from the property line this placed the car about four-tenths of a foot from the street line. Upon being recalled to the stand by plaintiff, Leroy made an "estimate" that the front of the car was "maybe a yard" from the garage door.

Leroy Hall, Sr., the child's father, estimated the length of defendant's stationwagon as 16 or 17 feet. Mrs. Miles said she did not know how far the back of her car was from the street, but thought its front may have been from two and one-half to three and one-half feet from her garage door.

There were no eye-witnesses to the unfortunate accident which resulted in the death of the child. The questions whether the child was run over by defendant's car and, if so, whether the negligence of the defendant proximately caused the accident, were for the jury, and the jury has found for the defendant. Under the circumstances, the verdict is conclusive in the absence of some reversible error in the instructions.

The principal argument of the plaintiff with respect to the instructions refused is that the defendant was under the duty to bring her car to a complete stop immediately before entering upon the street, and that her failure to do so constituted negligence as a matter of law. She next contends that the trial court erred in granting defendant's instruction 2-D because it was a finding instruction limiting defendant only to the duty of keeping a proper lookout.

The following instructions were granted at the request of the plaintiff:

Instruction P-1 told the jury that Rebecca Hall, being under the age of seven years, was not guilty of negligence as a matter of law.

Instruction P-2 instructed the jury as to the care which the driver of an automobile owes to children, the measurement of the conduct of a child of decedent's age, and the responsibility of the driver for failure to exercise the care required under the circumstances.

Instruction P-3 told the jury that it was the duty of the defendant to keep a reasonable lookout while backing her vehicle out of the

driveway into the street.

Instruction P-5 related to the credibility of witnesses and the weight to be given their testimony.

Instruction P-9 told the jury that in backing an automobile from a private driveway on to a public street, the driver must exercise that degree of caution that an ordinarily prudent driver would exercise under similar circumstances.

Instruction P-10 related to the measure of damages, if the jury found a verdict for plaintiff.

The four instructions granted the defendant covered the following issues: 1-D told the jury that the burden was on plaintiff to prove negligence on the part of the defendant by a preponderance of the evidence; 2-D told them that if they believed "from the evidence that Mrs. Miles exercised ordinary care in the matter of lookout in backing her car out of the driveway, and that she did not see the child," they should find for the defendant; 3-D told them that "until a motorist sees or by the exercise of reasonable care should see a child in or near the street, there is no duty of prevision owed to the child;" and 4-D instructed the jury that the burden was on the plaintiff to prove "not only that the Miles' car passed over the child, but also that Mrs. Miles before the accident saw, or by the exercise of reasonable care should have seen the child in or near the street." These instructions stated familiar principles, approved by this Court in numerous cases.

We take up next a consideration of the refused instructions.

Refused Instruction P-4 was covered by granted instruction P-2. There was no evidence that defendant failed to have her vehicle under reasonable control, or that she drove it at a speed and in a manner so as to endanger the lives of others.

Instruction P-6 was also covered by granted Instructions P-2 and P-3.

Refused Instruction P-8 was covered by granted Instructions P-3 and P-9, which instructions told the jury that it was the duty of defendant, in backing her car to the street to keep a reasonable lookout, and to exercise "that degree of caution which an ordinarily prudent driver would exercise under like circumstances."

Refused Instructions P-7 and X would have told the jury that if they believed that "the rear of defendant's station wagon was parked approximately 10 feet from the ditch, it was the duty of the defendant to bring her vehicle to a stop immediately before crossing

the ditch into the paved portion of the street," and that her failure to do so was "negligence as a matter of law." Neither instruction mentioned the subject of proximate cause.

In support of Instructions P-7 and X, plaintiff relies upon Virginia Code, 1950, §§ 46-212 (6)[2] and 46-240 [3], and *Messick* v. *Barham,* 194 Va. 382, 73 S. E. (2d) 530.

No witness was able to give the exact distance the car was parked from the street. According to various estimates, its rear was from four-tenths of a foot to ten feet from the street line. There was nothing to obstruct the view of its driver, and in either case she had the same opportunity for observation of the surrounding circumstances. In any event, it is undisputed that the car was in a stopped position immediately before it entered the public highway. To start, stop and start again a vehicle about to enter a public highway, under such circumstances, is beyond the object of the statute. Nor do the statutes require a car to be brought to a stop within the boundary lines of a public highway before entering upon its hard surface. The words "public highway" mean the whole surface, not merely the hard surface, or only the main traveled part of the highway.

Moreover, it was not shown that the failure of defendant to stop her car after she started to back was the proximate cause of the accident.

The facts and circumstances in *Messick* v. *Barham, supra,* are not identical with those here. There defendant's car was parked 13 feet north of the curb line of the street. His property line ended at the inside edge of a sidewalk between his property and the street. The plaintiff was standing on the pavement in front of defendant's driveway at about dusk, holding a car door open so that her two children could get out, when defendant backed his car down his driveway, and without any warning struck plaintiff. Defendant did not see plaintiff's car with its lights on, and it was in evidence that he said he did not see it due to the fact that he looked only to his right and not to the rear or left of his car. In addition to questions of negligence, there was involved the question whether the sidewalk was a portion

---

[2] § 46-212 (6) makes it unlawful for any person to "Drive a vehicle out of an alley, lane or building into a street without first bringing such vehicle to a stop immediately before entering such street;".

[3] § 46-240. "The driver of a vehicle entering a public highway from a private road or driveway shall, immediately before entering such highway, stop and, upon entering such highway, shall yield the right of way to all vehicles approaching on such public highway."

of the street. The principles there stated were applicable to the peculiar facts of that case.

■ Instruction P-2, granted at the request of plaintiff, fully instructed the jury as to the duty of the driver of an automobile toward children, considering the age, maturity and intelligence of the child, whenever the operation of an automobile involved the safety of a child, and the presence of such child may be apparent to, or discoverable by, the driver of the car; and the responsibility of the driver when his failure to exercise ordinary care under the circumstances results in injury to the child. With the issue reduced to the single question whether defendant kept a proper lookout, the trial court did not err in granting Instruction 2-D. After all that has been said and considered, that question was the controlling issue in the case.

In the recent case of *Conrad* v. *Taylor, Adm'r, etc.*, 197 Va. 188, 89 S. E. (2d) 40, we had occasion to review and discuss the duties and responsibilities of a driver of an automobile with respect to the safety of children he may encounter upon the streets and highways. There we said that while he was not an insurer of the safety of such children, his duty towards them is not measured by the standards applicable to adults. One must be on the alert for unpredictable acts of children, who are presumed to lack the knowledge and experience to know an essential danger or to estimate correctly the probable consequences of their acts in a given situation. The duty of reasonable care required of the driver towards them is commensurate with the danger and probability of injury under the circumstances, a care proportionate to "the apparent ability of the child, in view of his age, maturity and intelligence, to foresee and avoid the perils which may be encountered, if those perils are such as have become apparent to, or should have been discovered by, the motorist in the exercise of ordinary care under the circumstances." 197 Va. 191, and cases cited.

Varying decisions in cases of the type here are due in large measure to the concept that the jury may have found from the evidence of the particular case that the driver of the car did or did not know, or in the exercise of due care, should or should not have known of the presence of the child in a place of danger about the automobile.

Cf. *White* v. *Edwards Chevrolet Co., Inc.*, 186 Va. 669, 43 S. E. (2d) 870, where we held that a driver is under no legal obligation to look around and under his car lest a child too young for discretion and undirected by his parents had tucked himself away in an

obscure place beyond the casual and convenient notice of the driver.

In this case, there was no evidence on which the jury could find that the defendant had anything to put her on notice that the child was in the neighborhood of her car immediately before starting it, or after she started it, or that required her to make any more investigation than she did make to determine whether she could move her car without injuring any person. There was no evidence that she failed to exercise ordinary care in the operation or control of her car, or in keeping a proper lookout. Therefore, under the facts and circumstances, the jury was warranted in finding her not guilty of negligence which proximately caused the death of the Hall child. We are of opinion that the instructions given to the jury fully and clearly advised them on all of the issues in the case.

For the reasons stated the judgment is affirmed.

*Affirmed.*