# Richmond

## Josh Emmerson Wright v. John W. Kelly, Administrator, Etc.

November 27, 1961.

Record No. 5293.

Present, All the Justices

*Robert T. Vaughan* and *Frank M. Slayton* (*Easley, Vaughan & Slayton,* on brief), for the plaintiff in error.

*Don P. Bagwell* (*Tuck, Bagwell & Dillard,* on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

This is an action for the death by wrongful act of John Anthony Kelly, an infant 17 months of age, sometimes hereinafter referred to as Tony, who was killed instantly as a result of the alleged negligence of Josh Emmerson Wright, the defendant, when he backed his truck onto the child in the driveway of the Kelly home. A trial by jury resulted in a verdict of $20,000 for the administrator, plaintiff, on which the trial court entered judgment, and the defendant is here on a writ of error.

The defendant contends that the trial court erred in (1) not holding, as a matter of law, that the defendant was free of actionable negligence; (2) granting plaintiff's instruction No. 1; (3) permitting the plaintiff to exhibit a picture of the decedent to the jury; and (4) allowing the introduction of certain evidence.

The fatal accident occurred in Halifax county, Virginia, on the morning of June 25, 1959, when the defendant was backing his truck out of the driveway which runs through the Kelly yard into a private farm road.

On the morning of the accident the defendant, with James Shelton as a passenger, drove his lumber truck, which had a long, flat body elevated an estimated three or four feet above the ground and extending back approximately six feet behind its large dual rear wheels, to the Kelly home for the purpose of offering the child's grandfather a ride to Brookneal. He had on other occasions visited the Kelly home, was acquainted with Tony, and knew that he and other children frequently played in the yard around the house. As the defendant drove into the driveway he saw Tony playing in the yard with his four-year-old cousin. When Tony saw the truck he came over to the driveway and ran along the side of the truck for a short distance and the defendant talked to him as he drove along. The defendant parked the truck in the driveway beside the Kelly home, leaving Shelton in it, and went around to the back porch of the house to inquire for Tony's grandfather. He last saw Tony in the general area of the parked truck and only a few yards away from it.

The defendant remained in the back of the house approximately ten minutes, and as he returned to his truck with the child's grandfather they began to laugh and joke about a comical hat which the grandfather wore. This hilarity continued after they both got in the truck and until the fatal accident.

The defendant testified that he looked down the driveway as he walked to the driver's side of the truck before getting into it. He stated that he was not thinking about Tony being near the truck when he last saw him, and had he thought of this he would have gone around to the back of it to look for him before backing out. After the defendant got back in the truck he started the motor, looked in the side view mirror, and, before backing, waited for Shelton to move his seat so Tony's grandfather could sit in the middle.

When Tony's mother heard the truck motor start she went to the front door of the house to look for him and saw him standing under the body of the truck close behind its right rear dual wheels. She was then approximately 20 to 25 feet away from the truck, which had not started to move, and she began screaming and running toward the child. Tony's aunt heard the screams and she began screaming and ran from the rear of the house toward the truck. She came from the same direction as the defendant when he returned to the truck with the grandfather, and she saw the child standing behind the rear wheels of the truck before it moved.

After the mother started screaming and running to her child the truck started backing slowly and then stopped momentarily after the dual wheels had knocked him down. It then moved backwards again a short distance and stopped after the wheels rolled onto the child, killing him instantly, while the mother was within one and one-half feet of reaching him.

The truck's motor made no more than the normal noise, and the window on the driver's side was down. The defendant and his passengers testified that they were laughing and joking and did not hear the screams of the mother and the aunt until the truck had backed on the child. The defendant did not see the mother until he looked through the back window of the cab, at which time the fatal accident had already occurred.

Tony's father testified that on the afternoon following the accident the defendant stated to him that the accident was all his fault. This the defendant later denied.

The defendant first contends that the trial court should have sus-

tained his motions to strike the evidence, either at the close of the plaintiff's case or after the close of the whole case, because there had been no showing of actionable negligence on the part of the defendant.

He argues that the decisions of this Court in *White* v. *Edwards Chevrolet Co.*, 186 Va. 669, 43 S. E. 2d 870, and *Ward, Adm'r* v. *Lewis*, 197 Va. 811, 91 S. E. 2d 393, are controlling here and that the evidence did not, as a matter of law, make out a case of actionable negligence on the part of the defendant because he was not required to search for the child whom he could not see, standing under the truck, before backing it. On the other hand, the plaintiff says that under our holding in *Conrad* v. *Taylor, Adm'r*, 197 Va. 188, 192, 193, 89 S. E. 2d 40, 43, the facts and circumstances of the instant case presented a jury question as to whether the defendant should have made a reasonable inspection to determine the child's whereabouts before backing the truck.

It is true that " 'Ordinarily a driver is not required to search for children on the running board on the far side of the vehicle, or hidden underneath or in front of it, whom he cannot see, before starting.' " *White* v. *Edwards Chevrolet Co., supra*, 186 Va. at p. 674, 43 S. E. 2d at p. 872. But where the driver of a motor vehicle knows, or in the exercise of reasonable care should have known, of the presence of a child playing around or near his vehicle a short time before moving it, he is charged with the duty of exercising the same degree of care and inspection that a reasonably prudent person would have exercised under similar circumstances and conditions. *Conrad* v. *Taylor, Adm'r, supra*, 197 Va. at p. 191, 89 S. E. 2d at p. 42; 2A Blashfield's Cyclopedia of Automobile Law and Practice, § 1509, p. 440, and footnotes pp. 441, 443 and p. 62 of the supplement. See also *Hall, Administratrix* v. *Miles*, 197 Va. 644, 651, 90 S. E. 2d 815, 821; Annotation, 63 A. L. R. 2d, § 22, p. 239, on liability for injuries resulting from backing on private premises.

The degree of care required of the driver of a motor vehicle not to injure a child whom he has seen, or in the exercise of reasonable care should have seen, in or near a private driveway, street or highway is commensurate with the apparent ability of the child, taking into consideration his age, maturity and intelligence to foresee danger and the probability of injury. The conduct of a child is not measured by the same rules which cover that of an adult, because it is a matter of common knowledge that the actions of a child are unpredictable and that he acts thoughtlessly and upon childish impulses. The younger the child the less able he is to take care of himself and the greater the duty

of the driver of the motor vehicle to exercise vigilance and care to avoid injuring him. *Conrad* v. *Taylor, Adm'r, supra; Baker, Adm'r* v. *Richardson,* 201 Va. 834, 837-838, 114 S. E. 2d 599, 602; *Harris* v. *Wright,* 172 Va. 67, 72, 200 S. E. 597, 599, 600.

The *White* and *Ward* cases, *supra,* are readily distinguishable upon the facts from the present case. In the *White* case there was no evidence upon which it could have been concluded that an ordinarily prudent person, acting under the same circumstances as the driver of the defendant's wrecking truck, would have been put on notice that the child might be in or upon the vehicle at the time it was started and headed for the highway.

In the *Ward* case the evidence failed to show the location of the defendant's automobile in her driveway, the distance the child was from the car when the defendant saw her walking in the direction of a house located across the street, or the time that elapsed before the car was moved. In affirming the action of the trial court in striking the evidence and entering judgment for the defendant, we held that the evidence was insufficient to establish actionable negligence on the defendant's part.

In *Conrad* v. *Taylor, Adm'r, supra,* the evidence showed that the defendant knew children of tender years had been playing around his automobile almost immediately before starting it, and we held that it was for the jury to say whether an ordinarily prudent person would have made an investigation to determine if he could move his car without injuring them. 197 Va. at p. 193, 89 S. E. 2d at p. 43.

The present case is controlled by the principle set out in the *Conrad* case. Here the defendant often visited the Kelly home and he knew that Tony and other children frequently played in the front yard, through which the driveway ran. He knew that Tony was attracted to him or the truck when he drove it in the driveway because he ran over near the truck. He last saw the child in the general area of and only a few yards from the truck after he had parked it in the driveway and only ten minutes had elapsed before he got back in it. He testified that if he had thought about the child being near the truck when he last saw him he would have ascertained his whereabouts before re-entering the truck and backing it. He thus recognized that Tony might be found somewhere around the truck while playing in his own yard and driveway. Hence it became his duty to exercise that degree of care before backing his truck that a reasonably prudent person would have exercised under the circumstances then existing. He ad-

mitted to the father of the child that the fatal accident was all his fault. Moreover, there was evidence that the child's mother and aunt made outcries of warning before the truck was backed, and it could be inferred that the defendant did not heed these warnings because of the laughing and joking carried on in the cab at the time.

We are of opinion that a factual question was presented for the jury to determine whether a reasonably prudent person, knowing that Tony was playing around his truck, which was parked in the driveway to the child's home a few minutes before backing it, would have made an investigation to determine if it could be moved without injury to the child. Thus the court correctly submitted the issues of negligence and proximate cause to the jury.

■ The defendant next says that the court erred in granting plaintiff's instruction No. 1, which reads as follows:

"The Court instructs the jury that it was the duty of the defendant to exercise reasonable care:

1. In maintaining a proper look out for the infant in order to avoid injury to him;

2. In heeding any warnings given of impending danger to said infant; and if the defendant failed to exercise such care, he was negligent and if such negligence was a proximate cause of the accident in question, you should return a verdict in favor of the plaintiff against the defendant."

The reason assigned for the objection and exception to the instruction was that it led "the jury to believe that the defendant owed a duty to maintain a special lookout for the infant who was out of his view." We think that the reason assigned for the objection, which applied only to the first two paragraphs of the instruction, was well taken.

The instruction placed upon the defendant the duty to make an inspection around and under the truck before backing it in order to ascertain if the child was in danger. It should have stated that if the jury believed from the evidence that the defendant in the exercise of reasonable care knew, or should have known, under the circumstances and conditions then existing, that the child might be in a place of danger, then it was his duty to maintain a proper lookout and make a reasonable investigation to determine whether he could move his truck without injuring the child. The harmful effect of the instruction was not cured by the giving of defendant's instruction E, as contended by the plaintiff.

Since the case will have to be reversed and a new trial ordered because instruction No. 1 was erroneous, it may not be amiss for us to point out that the last paragraph of the instruction was also an improper statement of the law, although a proper reason was not assigned for the objection. It should have been qualified with language to the effect that, if the defendant heard, or in the exercise of reasonable care should have heard, the warnings of danger before backing his truck.

The third contention of the defendant is that the court erred in permitting the introduction of a photograph of the plaintiff's decedent.

The photograph introduced into evidence was taken when the child was twelve months of age, five months before the fatal accident. It was not relevant or material to the issues being tried and should not have been admitted.

We approve the rule relative to the introduction of photographs into evidence set out in 20 Am. Jur., Evidence, § 729, p. 609, which reads as follows:

"It is always essential to the right to introduce a photograph in evidence that it have a relevant and material bearing upon some matter in controversy at the trial, and the party offering such evidence should give proof of its relevancy to the issue before the jury. A photograph which is entirely irrelevant and immaterial to any issue in the cause, and which is of such a character as to divert the minds of the jury to improper or irrelevant considerations should be excluded from the evidence. The determination of the relevancy and materiality of a photograph is left to the sound discretion of the trial judge. Photographs that are calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions."

The defendant's last contention, that the admission of certain evidence was error, need not be dealt with here since the trial court instructed the jury to disregard the evidence complained of after it had been admitted, and it will not be assumed that the court will permit this evidence to be introduced on the retrial of the case.

For the reasons stated, the judgment of the court below is reversed and a new trial ordered.

*Reversed and remanded.*