## Richmond

E. W. WARD, ADMINISTRATOR OF THE ESTATE OF JOAN LISTEN WARD
v. CATHRYN A. LEWIS.

March 5, 1956.

Record No. 4466.

Present, All the Justices.

The opinion states the case.

*Thomas A. Williams* and *George P. DeHardit*, for the plaintiff in error.

*Alex H. Sands, Jr.* and *A. L. Marchant*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

On the afternoon of November 8, 1953, Joan Listen Ward, two years and four months old child of E. W. Ward, was struck and killed by an automobile as it was being backed by Catheryn A. Lewis along a private driveway extending from her garage to the street in front of her residence.

Action at law under § 8-633, Code of 1950, was instituted by E. W. Ward, administrator of his infant child, against Cathryn A. Lewis to recover damages for the alleged negligent killing of decedent. The litigants will be referred to as plaintiff and defendant in accordance with their positions in the trial court.

When plaintiff rested his case, defendant's motion to strike the evidence on the ground that it was insufficient to establish actionable negligence was sustained. Upon return of a verdict for defendant, judgment was entered accordingly.

The decisive issue is whether or not the evidence is sufficient to prove negligence on the part of defendant in the operation of her automobile.

Two hand-made sketches not drawn to scale were introduced in evidence to show the location of the decedent's and defendant's homes and the private driveway between these two residences in which the child was killed. These sketches also show the layout of the lots and location of several other homes occupied by other families in the immediate vicinity. The dimensions of the lots upon which the eleven homes in the immediate area are located are not shown, and no distances in feet, yards, or otherwise, are on the sketches to indicate the width or depth of the several lots or distances between the houses. Neither was the width or length of the street upon which the lots face shown, nor was any testimony offered to prove the distances between any objects on the sketches. However, it does appear from the sketches that state Route 14 runs north and south, and a hard-surfaced street on which these eleven houses front, extends in a westerly direction from Route 14 and comes to a dead end some distance from that highway. At the dead end of this street and facing eastwardly toward the highway is the W. S. Hudgins home. Between the Hudgins home and the highway five homes are located on each side of the hard-surfaced street. In short, the sketches show an area somewhat resembling a horseshoe, with the Hudgins home located at the toe of the shoe facing toward Route 14, which crosses the shoe heel, with five other houses along each prong facing toward the inside of the shoe. At the rear of these several houses there are garages, and private driveways extend from the street in the center of the shoe to the respective garages at the rear of the several lots. The third home distant from Route 14 on the north prong of the shoe and thus on the north side of the hard-surfaced street that serves the area was occupied by decedent

and her parents. The fourth home on the north side of the hard-surfaced street is the Lewis home, occupied by defendant and her family. Extending northwardly from the hard-surfaced street along the eastern side of the Lewis lot is the private driveway in which the child was struck and killed. It is used by the Lewis family in going to and from their garage near the rear of the lot, and it passes between the Ward residence and the Lewis residence.

On the south prong of the horseshoe diagonally across the hard-surfaced street from the Lewis home and slightly farther from Route 14 is the home occupied by the Moody family.

Several children lived in these homes, and decedent, a Lewis child, and other children played together at times in the respective yards. On occasions decedent had been taken for a drive by defendant in her car. On the afternoon of the tragedy decedent was allowed to go out in the yard to play. Shortly thereafter her father heard a car start and ran to the front door, but not seeing Joan, he looked toward defendant's home and saw defendant's car backing along the private drive toward the street. When he stooped down, he saw Joan lying under the car on the left, or driver's side. At that moment he called to defendant to stop, and though she seemed somewhat confused she stopped the vehicle. When plaintiff reached the car and picked Joan up, she was unconscious and died that afternoon. Examination disclosed that a "basilar skull fracture" caused her death.

Plaintiff also testified that sometime after the accident defendant stated "that when she came out of her own home" to get in the car, she "saw Joan in her own yard walking in the direction of the Moody house," which is going west in the opposite direction. She (defendant) then got in her car and started the motor, and she paused to attend to her own child who was on the front seat to adjust clothing or blanketing or something of that sort. She then without looking again began to back the car, and, in her own words or to the effect, that she had no idea that Joan could have possibly gotten back in the vicinity of her car in that short lapse of time and that it just must have been a longer time that she had been attending to her baby than she had imagined.

"Then she heard me holler to her and that is when she stopped the car, and by that time, of course, she had already struck my daughter."

Nellie D. Jones, decedent's grandmother, testified that there were

several children in the neighborhood and at times they played together "from one place to the other." When asked what Mrs. Lewis said to her and others the next day after the accident, she testified as follows:

"A. Mrs. Lewis said that when she came out to get in the car she saw Joan in her yard and she was going the direction towards Mrs. Moody's and she stopped. She thought she could get out before Joan got over to the car, but she stopped to arrange her baby's clothes and failed to look back and then started the car. * * *

"Q. Are you sure that Mrs. Lewis told you when she saw Joan, she was headed towards the Moody house?

"A. Yes.

"Q. If she was going the direction of the Moody home, would that not put her back to Mrs. Lewis' car walking away from it?

"A. I should imagine it would put her back to it.

"Q. Why then do you think, or did Mrs. Lewis make the statement then that 'I tried to get out before Joan saw me'—?

"A. She didn't say that. She says she thought she could back out before Joan got over to the car."

It will thus be seen that where decedent was when defendant saw her sometime prior to backing the car is not shown by the evidence.

The location of the car in the driveway, the distance the child was from the vehicle when seen, and the time that elapsed before the car was moved are not proved, and none of these vital circumstances can be determined or inferred from the evidence. They are left wholly to surmise and conjecture.

We are not forgetful of the fact that children act thoughtlessly and upon childish impulses. Nor are we unmindful that care commensurate with the circumstances is required of a motorist who has observed a child so near to his motor vehicle as to prompt a reasonable man to conclude that if the child should act upon impulse, he might come in contact with the vehicle. The principles applicable to such facts have been recently restated and discussed in *Conrad* v. *Taylor*, 197 Va. 188, 89 S. E. (2d) 40.

Though the duty that a driver of a motor vehicle owes to children is not measured by the same standards applicable to adults, yet he is not an insurer of their safety and plaintiff must bear the burden of proving negligence before a recovery can be had.

"It must be remembered that the burden was on the plaintiff to prove not only that the defendant was negligent; but that his neg-

ligence was the proximate cause of the accident. A mere inference of the possibility of defendant's negligence was not sufficient to establish his liability." *Boyd* v. *Brown*, 192 Va. 702, 711, 66 S. E. (2d) 559.

"The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well-balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption but must be founded upon some fact legally established. This Court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess, or random judgment, upon mere supposition, without a single known fact." *Chesapeake and Ohio R. Co.* v. *Heath*, 103 Va. 64, 66, 48 S. E. 508.

"As we have many times said, there is no presumption of negligence on the mere happening of an accident. On the contrary, the party who affirms negligence must establish it by a preponderance of the evidence. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established." *Richter* v. *Seawell*, 183 Va. 379, 382, 32 S. E. (2d) 62.

Here the scanty evidence establishes no facts and affords no basis from which to infer that defendant was negligent in moving her car without ascertaining the child's whereabouts at that immediate moment. Merely because defendant saw the child at some unspecified distance from her car, and then at some time thereafter, not stated or estimated, moved her car backward and struck the child does not justify the inference that she was negligent.

The proved facts will not sustain a finding of negligence without resort to speculation and conjecture, and that is not permitted.

The judgment is

*Affirmed.*