51 So.2d 717 (1951)
GLASS et al.
v.
PARRISH.
Supreme Court of Florida, en Banc.
April 6, 1951.
*718 R.F. Maguire, R.H. Wilkins and Maguire, Voorhis & Wells, all of Orlando, for appellants.
Alex Akerman, Jr., Orlando, for appellee.
HOBSON, Justice.
This appeal is from a final judgment entered in an action for malicious prosecution which judgment was predicated upon a jury's verdict. Appellee was plaintiff below and Appellants were defendants.
Appellee employed Appellants to install custom-made seat covers on her new Packard convertible automobile. The seat covers were installed and the charge made therefor was $199.50. Appellee paid the bill with a check to which she signed her mother's name. Appellants deposited the check and subsequently it was returned by the bank upon which it was drawn. The official slip had the notation "signature" and there was written in pencil upon the check the following words: "Signature not as authorized." Appellants consulted their attorney with the result that a charge of forgery was filed against Appellee. Appellants or one of them initiated the criminal action. The Justice of the Peace issued his warrant of arrest and Appellee was arrested and incarcerated in the jail at Tavares.
After the preliminary hearing before the Justice of the Peace the Appellee was discharged. The Magistrate found from the evidence that "there is not sufficient cause to believe the defendant, Patricia Martin, is probably guilty of the offense with which she was heretofore charged in a warrant issued out of this Court."
Shortly after the preliminary hearing Appellee instituted the present suit in and by which she sought and obtained a judgment for $2300.50. The verdict was in the amount of $2500.00 for the Appellee and $199.50 against the Appellee and in favor of the Appellants. Thus, the final judgment, as previously stated, was in the sum of $2300.50.
We have held that in an action grounded upon malicious prosecution the plaintiff has the burden of proving: (1) the instigation of the criminal proceeding by the defendant; (2) its termination in favor of the plaintiff; (3) the exercise of malice by the defendant; (4) want of probable cause for the prosecution; and (5) damage. Duval Jewelry Co. v. Smith, 102 Fla. 717, 136 So. 878; Ward v. Allen, 152 Fla. 82, 11 So.2d 193.
Appellants entertain the view that the Appellee failed to prove by a preponderance of the evidence: (1) the exercise of malice by the defendant and (2) want of probable cause for the prosecution. Such conclusion can be reached only upon the premise that there was no competent substantial evidence before the jury which, if believed by it, established malice and want of probable cause. After a careful study of the transcript of testimony we have reached the conclusion that there was evidence of want of probable cause, and if independent proof of malice was not clear and positive it matters not, for the jury had the right under our prior adjudications to infer malice after proof of want of probable cause. Appellants also contend that they established by uncontroverted testimony their defense of advice of counsel.
The plaintiff (Appellee here) testified that the defendants (Appellants here) knew her name was Patricia Martin and that she told them she had been authorized by her mother to sign her name to checks on the mother's bank account, which she further testified she had done as a course of conduct over a period of years. Mr. Crumly confessed that he knew the Appellee both as Miss Pat Martin and Miss Patricia Martin but he and Mr. Glass denied that she advised them she was authorized to sign her mother's name to the check. Mr. Crumly, with whom the check transaction took place, attempted to explain the fact that he saw her make out the check in the name of Irene Martin by asserting that "I just assumed that Pat might be her nickname." The jury had a right to refuse *719 to accept this weak excuse, for the witness knew the Appellee's name was Patricia or Pat Martin. Although it would not have been unreasonable to presume that Pat was a nickname for Patricia, the jurors would have been credulous indeed (and this was a matter solely for the jury to conclude) had they followed the testimony to the effect that the witness assumed that Pat was a nickname for Irene. These conflicts in the testimony were resolved by the jury against Appellants and in favor of Appellee.
The foregoing testimony, coupled with other evidence hereinafter detailed, when considered in the light of the evidentiary fact that the criminal prosecution was dismissed by the magistrate after the State had presented its case at the preliminary hearing and in view of the appropriate inference that the criminal prosecution had as its purpose and objective the collection, by coercion, of a civil debt, was ample predicate for the jury's conclusion that want of probable cause had been established, that appellant had not acted in good faith and that malice motivated the accusation and consequent prosecution.
Furthermore, in considering the question of good faith on the part of appellants we are drawn to a study of a letter (Defendant's Exhibit 3) written to the appellee's mother (Mrs. Irene R. Martin) by the attorney for appellants which letter bears date of December 31, 1947 and to an examination of the check, which was returned by the bank on December 1, 1947 together with the bank slip attached to said check. On the back of the check is a penciled notation "Signature not as authorized" and the official bank slip gives one word only as the reason for the return of the check, to-wit: "Signature." In considering the letter written by Appellants' attorney to Mrs. Irene R. Martin the fact that the check, together with its accompanying official bank slip, was in the hands of said attorney at the time he wrote the letter and had been returned by the bank thirty days prior thereto, is significant and worthy of studied analysis. The letter reads:
"Mrs. Irene R. Martin,
 506 Center St.,
 Eustis, Florida
"Dear Mrs. Martin:
"I have had referred to me by the Orlando Seat Cover and Supply Company, 100 West Washington St., Orlando, Florida, a certain check in the amount of $199.50, dated November 17, 1947, No. 165, drawn on the First National Bank, Eustis, Florida, and signed `Irene R. Martin'. This check was put through the usual channels and payment was refused. From the information I have received, your daughter had certain labor and materials furnished in and about a 1948 Packard convertible for seat covers, etc.
"I have written your daughter, Miss Patricia Martin, about this check, since I am informed she issued it, but I am not positive whether or not you had signed the check yourself or whether your daughter signed your name as the maker.
"You may have given your daughter authorization to sign your name, but if you did not, the situation poses a rather serious situation. I am somewhat reluctant to take this matter into court, but I am sure you will agree with me that the Orlando Seat & Supply Company cannot afford to lose such a sizable amount, especially since this was a rush job.
"Payment must be made on this check on or before January 10, 1948, or else I will have no other recourse than to advise my client to turn this matter over to the County.
 "Very truly yours,
 "J. Walter Hall" (Italics supplied).
This letter shows clearly that the attorney entertained doubt with reference to the matter of the lack of authority of the appellee to sign her mother's name to the check even after he had been employed by the appellants who through counsel in this case contend that a full disclosure of all material facts was made to their attorney when they employed him and sought his advice. The jury functioned definitely within its province and in line with well-reasoned judicial pronouncements when it concluded that the appellants, although they had grounds for suspicion, did not themselves believe that appellee had been guilty of forgery; and the jury likewise acted within the bounds of reason when it *720 refused to be lead to the conclusion that there was no agreement, understanding or funds with the bank to meet or pay said check. Good faith is always an essential element to be considered on the question of probable cause. We quote with approval from the case of Franzen v. Shenk, 192 Cal. 572, 221 P. 932, 934, wherein the Supreme Court of California said: "The rule in this behalf is stated in Fleischhauer v. Fabens, supra [8 Cal. App. 30, 96 P. 17], where it is held, in effect, that the good faith of the defendant is an essential element in the defense of probable cause; and that even though a defendant shows reasonable grounds of suspicion, sufficiently strong in themselves as to warrant a cautious man in the belief that there was probable cause for the prosecution, nevertheless, if it be apparent that he did not himself believe in the guilt of the accused, then the circumstances upon which he relied will not suffice to shield and vindicate him." The California Supreme Court also approved and quoted from Broad v. Ham, 132 English Reprints 1278, the following language: "It would be a monstrous proposition that a party who did not believe the guilt of the accused, should be said to have a reasonable and probable cause for making the charge."
There is another theory upon which it is argued that the final judgment in this case should be reversed and that is the defense of advice of counsel. However, for this Court to hold a reversal in order it would be necessary to first conclude that there had been a full and complete disclosure of all the facts by the appellants, or one of them, to their attorney and that such a disclosure was established by uncontradicted evidence. If the evidence were conflicting upon the subject of full disclosure, then the jury had a right to conclude that factual issue against the defendants.
As heretofore stated, appellants knew appellee as Patricia or Pat Martin and appellant Crumly who accepted the check saw appellee make out the check and observed the signature "Irene Martin." The appellee testified she advised the defendants, or one of them, that she had been authorized by her mother to sign the check and explained that she had written checks on her mother's account many times before. It is true that the defendants denied she had advised them that she was authorized to write the check on her mother's account but this conflict in the testimony was solely a matter for the jury to settle. According to the testimony, and obviously in face of the foregoing denial, neither of the defendants advised their attorney that Miss Martin had told them she was authorized to sign the check.
Counsel for appellants state in their brief that "When the defendant Samuel E. Glass, Jr., called plaintiff's mother (the only person who could have given the authority to sign her name to the check) and was informed by her at that time in unequivocal language that the daughter had no authority to write the check, that the check was not hers and that she would not pay it, defendants without any further investigation, had probable cause to believe that forgery had been committed by plaintiff." (Italics supplied) The italicized portion of the foregoing quotation is not sustained by the testimony of any witness. Appellant Glass testified he told his attorney at the time he sought advice that the mother had stated the check was not authorized. Had this been true the defense of advice of counsel might have been sustained if "a full and complete disclosure" is satisfied by incorrect, misleading or untrue recitations of the facts. However, it is unnecessary to dwell at length upon what is meant by a full and complete disclosure for later in his testimony Mr. Glass contradicted himself by denying that he made such statement to his counsel and definitely admitted that the mother had not said her daughter did not have authority to sign the mother's name to the check. Actually the only information that the mother gave him in the telephone conversation which he had not possessed theretofore was that he would have to collect from her daughter for she would not pay the check. He, or his partner, had known from the beginning that the check was not her check and that was the only other statement which Glass testified the mother made to him. There was no inconsistency in her telephone conversation and the contention that she stopped *721 payment on the check and would not pay appellants because of "overcharge."
It is established law in this jurisdiction that advice of counsel is a defense to an action predicated upon malicious prosecution only in event there has been a full and complete disclosure made to the attorney before his advice is given and followed. It was the jury's prerogative to, and it evidently did, determine that a full and complete disclosure of all the material facts was not made to the attorney whose advice was sought. Consequently, the defense of advice of counsel was properly rejected by the jury.
It might appear harsh that the jury decided to render a comparatively large verdict against the defendants but if there was no harmful error at the trial that verdict must be sustained. However, it is not difficult to understand that the jurors who heard and observed the witnesses in the milieu of the trial court room and who live in the general community in which the parties to the suit reside, were impressed by the fact that the plaintiff, who at that time was an unmarried girl of but 17 or 18 years of age, had been greatly embarrassed and humiliated by her arrest and prosecution immediately following return from her honeymoon. If it were appropriate to speculate or conjecture, one might find the real offender to be the indulgent mother who probably laid the foundation for the regretable incident which culminated in the instant suit.
We are not unaware of the fact that suits bottomed upon malicious prosecution generally find little favor with the courts. However, actions for malicious prosecution have not been out-lawed in this State and until and unless they are the rules and principles established for the orderly and fair trial of law suits must be observed by judicial tribunals. Almost every activity of ordered society must be carried on, and canalized, within the bounds of reasonable rules and regulations. Established principles of law and the rules and regulations prescribed for judicial procedure, including those which were ordained for the guidance and which define the province of courts of last resort, should not be followed in some cases  but in all cases. They were not created for the purpose of being administered only upon the whim or caprice of the individual judge and they should never be regarded lightly. We have been taught to proclaim proudly that ours is a "government of laws and not of men". Deo volente  may it ever remain so.
This Court has repeatedly pronounced, as has almost every court in the English speaking world, the rule that it will not substitute its judgment for that of a jury when the jury has resolved the conflicts in the evidence and has determined the issues of fact. An exception to this rule exists only in a case wherein there is no competent substantial evidence which sustains the jury's verdict or, stated in another form, when the verdict is against the manifest weight of the evidence. The pronouncement of the foregoing rule is consistently made, published and republished. Regretably, at times there may have been room for the feeling that all courts have not adhered to the rule as religiously as they have proclaimed it. It is possible too that appellate courts are not entirely free from the criticism that they have fortuitously lost sight of the province of appellate courts. These courts were not established for the purpose of trying cases de novo on cold typewritten transcripts. An appellate court has the duty to consider and determine whether a case was tried in the nisi prius court under the principles, rules and regulations prescribed for its conduct. In other words, the appellate court should reverse judgments of trial courts in those cases only wherein it has been made to appear clearly that the prescribed procedure was not followed and that harmful error resulted from such obliquity.
It is true that the primary objective of every court is to administer simple justice but an appellate court should not attempt to carry out this worthy purpose in complete disregard of established law, nor should it forget and step beyond its own province in order to do so. Moreover, there is no certainty, and but slight possibility, that justice will be better served by an attempt to ferret it out upon appeal, absent a definite showing of harmful and, consequently, reversible error.
*722 In the case of Perez v. Rodriguez, 155 Fla. 501, 20 So.2d 654, we said: "In action for malicious prosecution, consisting in signing lunacy petition against plaintiff, issues of malice, probable cause, reliance upon advice of counsel, and damages were for jury." We approve the following quotation from the appellate court of Indiana in the case of Cleveland, C., C. & St. L. Ry. Co. v. Dixon, 51 Ind. App. 658, 96 N.E. 815, 816: "`What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court; the latter for the jury. This subject must necessarily be submitted to the jury when the facts are in controversy; the court instructing them what the law is.' Pennsylvania Company v. Weddle, 100 Ind. 138, at page 147, and authorities there cited." (Italics supplied)
The many contradictions and conflicts in the testimony made this a typical jury case. The jury was entirely within its province in deciding, upon a consideration of all the testimony and circumstances surrounding the issuing of the check as it found them to be, that the appellee, who was evidently but a teen-age girl, did not unlawfully, feloniously and with intent to defraud, sign the name of another (her mother) without authority or issue a worthless check and that the appellants did not have probable cause to believe that she had done so and consequently did not act in good faith.
Should we reverse the final judgment consequent upon the verdict of the jury and which had the approval of an able, veteran Circuit Judge we would be guilty of substituting our judgment for that of the jury. Such action does not square with our concept of the province of an appellate court. It should not try a case, which is before it on appeal, de novo but should confine its activities within the periphery of its own orbit.
The final judgment from which this appeal was prosecuted should be and it is hereby affirmed.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.
CHAPMAN, ADAMS and ROBERTS, JJ., dissent.
CHAPMAN, Justice, dissents.
This is an action of malicious prosecution originating in the Circuit Court of Orange County, Florida, resulting in a verdict and judgment for the plaintiff-appellee in the sum of $2,500.00. The defendants-appellants, as counterclaimants, were awarded a verdict and judgment against the plaintiff-appellee in the sum of $199.50, being the value of a set of seat covers placed by the defendants-appellants in an automobile at the request of the plaintiff below. Final judgment in the amount of $2,300.50 was entered below for plaintiff-appellee and the defendants-appellants appealed. I have carefully considered the entire record and briefs of the respective parties; and it is my view and conclusion that the plaintiff-appellee failed to show or establish malice and want of probable cause within the meaning of our adjudications. See Gainesville Gas Co. v. Walters, Fla., 37 So.2d 695, and similar cases.
I think the judgment for plaintiff-appellee in the sum of $2,500.00 should be reversed and that the verdict and judgment in the sum of $199.50 awarded the defendants-appellants should be affirmed.
ADAMS and ROBERTS, JJ., concur.