WARREN, LAMAR, Associate Judge.
The plaintiff sued the defendants for damages resulting from the'fatal injury of his three-year old son, allegedly caused by the negligent operation of the truck of the defendant, Midstate Hauling Co., by the defendant driver, Robert O. Knight. The jury returned a verdict for the defendants and, after denial of a motion for new trial, the plaintiff appealed.
Among the points raised by the plaintiff on appeal are the giving of instructions on sudden emergency and darting out, and the failure to give one proffered on last clear chance. The first two instructions closely parallel the ones given in Klepper v. Breslin, Fla., 83 So.2d 587.
The plaintiff and his family lived on state highway 437, a two-laned road, nineteen feet wide between curbings, running between Sorrento on the north and Plymouth on the south. The accident occurred after school in the afternoon on January 23, 1962, as the truck of the defendant was proceeding south on a straight stretch of the highway between the crest of a low hill on the north and the crest of another low hill on the south, the two crests being about seven-tenths of a mile apart. The bottom between the hills was level and about two-tenths of a mile in length. The point of impact was about one-tenth of a mile from the bottom and as the truck was going up the south hill, blood being found in the west lane about two feet from the curb. The truck was a tractor-trailer combination designed for hauling sand, and at the time of the accident its gross weight was over 72,000 pounds, with an overall length of about fifty feet and a width of about eight feet.
The testimony of the driver showed that on the occasion his view was unobstructed, and while he was driving a large truck down the north hill at more than fifty miles per hour, he saw a boy on a bicycle a distance ahead who was swerving back and forth across the yellow line; in the hill bottom he was traveling at fifty miles per hour. When he was three to five hundred feet from the boy, who was in the close proximity of the child that was struck, he saw a cluster of children on each side of and off the road, and he blew his horn, which caused them to gather back from the road. At that time he was going over forty miles per hour, and at about the same speed when he was two hundred feet from the child. Between one hundred and two hundred feet from the children, the child started running out from the driver’s right, going to the left. At eighty feet from the child, “I couldn’t have been running over 28 or 30, 35 at the most,” and when he struck him he was running at twenty-five miles per hour. The first time he applied his brakes with the intention of stopping was when the child started running from the cluster on the right across the road, he not having seen him at any other time before that instant. When the child first started out in the road, the driver swerved and crossed the center line; the child kept on running and the driver turned to the right to go behind him, and at that time the child turned and ran into the left hand front bumper. From his experience with one of the units, loaded, and going at forty-five miles per hour, he *280 stated it might take two hundred feet or more to stop it completely, but he was not sure; when he was back down the road he was depending on his horn to get the children out of the road.
The evidence further showed that there were skid marks on the pavement in the right traffic lane, which led up to the marks on the curbing where the truck left the road immediately after striking the child, measuring over one hundred feet, which started straight and gradually increased to the right; the front of the truck continued another eighty-six feet after it left the road.
A sister of the child, in whose care the child was and with whom the child had been standing off the west or right side of the road, testified that after she first saw the truck at the top of the hill, the child ran across the road to the other side, paused, and ran back to her side; he then ran back to the other lane, stopped, looked at the truck, and then ran back towards her again. In addition to striking her brother, in passing between them, the truck also struck her bicycle, on which she was sitting off the road. A brother corroborated the testimony of the sister that the child crossed and recrossed the road prior to the time he ran out in the road and was struck. Another witness testified that the eye-level of the driver of the truck would be approximately eight feet from the ground.
In arriving at a decision it will be helpful to refer generally to the duties of a motorist with respect to children, and to certain decisions dealing with the doctrine of sudden emergency.
In 7 Am.Jur.2d, Automobiles and Highway Traffic, § 429, it is said, “More particularly as to the duties of the motorist, where he knows of the presence of a child or children in, near, or adjacent to the street or highway, or should know that children may be reasonably expected to be in the vicinity, he should be alert, attentive, or vigilant, and maintain a lookout. The motorist is required to maintain control of his vehicle, and must not drive at a high, dangerous, unreasonable, excessive, or unlawful rate of speed; and he ma)', under the circumstances, be required to slow down, or even to stop, and to remain stopped until the children are out of danger and the motorist’s vision of the road cleared. A motorist should not drive too close to children, and may under the circumstances be required to yield the right of way, to turn aside, or even to keep in a straight course, and not to drive on the left-hand side of the street or highwajr. A motorist who knows or should know of the presence of children in the vicinity must anticipate childish conduct, and may be required to anticipate that a child may suddenly cross the street or highway in front of his motor vehicle. The law recognizes the fact that children act upon childish instincts and impulses and requires those charged with the duty of care and caution toward them to plan on this and take precaution accordingly.” And in Miami Paper Co. v. Johnston, Fla., 58 So.2d 869, the court stated that, “It is a matter of common knowledge that small children are erratic and unpredictable, that they are liable to take off at any time and in any direction with no concern whatever for their own safety. The drivers of motor vehicles are charged with knowledge of their behavior * *
In Bellere v. Madsen, Fla., 114 So.2d 619, 80 A.L.R.2d 1, it was said that “It is well settled that a defendant is not entitled to the benefit of a charge on 'sudden emergency’ when his own negligent action creates or contributes to the creation of the emergency [citing cases]. It is equally well settled that the driver of an automobile — a ‘dangerous instrumentality’ — is charged with the responsibility of having his vehicle under control at all times, commensurate with the circumstances and the locale, and to maintain a sharp and attentive lookout in order to keep himself prepared to meet the exigencies of an emergency within reason and consistent with reasonable care and caution [citing cases].” See also, Sirmons v. Pittman, Fla.App., 138 So.2d 765.
*281 In Independent Oil Refining Co. v. Lueders, 17 La.App., 154, 134 So. 418, the court stated: “Here, it is very apparent that the speed of defendant’s truck was excessive. The skid marks on the pavement and the distance the truck ran after the danger became apparent show conclusively that, had the car been operated at a reasonable speed, even after the emergency came into existence, it could have been stopped before striking plaintiff’s car.”
The facts in the decision of Ball v. Witten, 155 Va. 40, 154 S.E. 547, are somewhat similar to those here. In that case there was a slight descent in the highway from the crest of a small hill to the point where the child, five years old, was struck. The hard surface of the road was about thirteen feet wide, wnth dirt shoulders on each side; from one extreme edge of the dirt shoulder to the extreme edge of the other was about sixteen feet. When the defendant reached the top of the hill he observed five children in the road some three hundred and fifty feet ahead of him. He sounded his horn and reduced his speed to fifteen to eighteen miles per hour; the three older children moved to the shoulder on the right, and the remaining two, one of whom was killed, went to the shoulder on the left. The distance betwen the children on the right and those on the left was close to fifteen feet, and through this space defendant undertook to pass at the above speed, with his foot removed from the brake. When he had proceeded to a point about ten to fifteen feet from them, the child ran diagonally across the road with his back to the oncoming automobile and collided with the front fender. Defendant testified that when he saw the child start across the road, he applied his brakes, and when the child collided with the automobile, he turned to the right, but that he could not turn freely either to the right or left without striking one or more of the other children. At the trial an instruction was given on the sudden emergency doctrine. In reversing a judgment for the defendant, the court said, “It could not be said that there was a sudden emergency, because the defendant was confronted with the danger of injury to the children when he first saw them. He had sufficient time and means to have avoided the injury by proceeding with the proper degree of care. If there was a sudden emergency, it was brought about by the defendant and not by the child.”
The factual requirements necessary to support an instruction on the sudden emergency doctrine are set forth in Dupree v. Pitts, Fla.App., 159 So.2d 904.
It may not be said that the perilous situation was not created or contributed to by the driver of the truck. In view of the weight and speed of the truck, its width and the width of the road, the height of the driver’s eye-level from the ground, and the unpredictable nature of small children, if a perilous situation existed it was created by the driver. The driver had ample opportunity to see and appreciate the dangerous situation long before the accident occurred. The accident was not unavoidable. Under the facts, it was error to give the instructions on the sudden emergency doctrine and darting onto the highway.
As to whether plaintiff’s instruction on last clear chance was properly refused, the evidence did not show that the doctrine was applicable. James v. Keene, Fla., 133 So.2d 297.
Because the judgment must be reversed and the cause remanded for a new trial, it is unnecessary to discuss plaintiff’s other points on appeal.
Reversed.
SMITH, C. J., and WHITE, J., concur.