176 So.2d 87 (1965)
MIDSTATE HAULING COMPANY, a Florida corporation, and Robert O. Knight, Petitioners,
v.
J.T. FOWLER, Respondent.
No. 33499.
Supreme Court of Florida.
May 19, 1965.
Rehearing Denied July 2, 1965.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, for petitioners.
Donald Walker and Charles M. McCarty, Orlando, for respondent.
CALDWELL, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the District Court of Appeal, Second District.[1] We have jurisdiction because of conflict between the decision under review and prior decisions of this Court.
The plaintiff, respondent herein, sued the defendants, petitioners, for damages resulting from the fatal injury of his three-year-old son, allegedly caused by the negligent operation of the truck of the defendant, Midstate Hauling Company, by the *88 defendant driver, Robert O. Knight. The jury found for the defendants and, after denial of a motion for a new trial, plaintiff appealed, assigning as error the giving of an instruction on sudden emergency and "darting out."
The District Court of Appeal, Second District, in reversing and remanding the cause for a new trial, relied on Bellere v. Masden, 114 So.2d 619, 80 A.L.R.2d 1 (Fla. 1959), and on the Virginia case of Ball v. Witten, 155 Va. 40, 154 S.E. 547 (1930), and held that, under the facts, an instruction on sudden emergency and darting out should not have been given because:[2]
"It may not be said that the perilous situation was not created or contributed to by the driver of the truck. In view of the weight and speed of the truck, its width and the width of the road, the height of the driver's eye-level from the ground, and the unpredictable nature of small children, if a perilous situation existed it was created by the driver. The driver had ample opportunity to see and appreciate the dangerous situation long before the accident occurred. The accident was not unavoidable."
The jury instruction in question, closely paralleling instructions approved by this Court in Klepper v. Breslin, 83 So.2d 587 (Fla. 1955), is as follows:
"Where the operator of a motor vehicle by a sudden emergency not due to his own negligence, is placed in a position of imminent danger and has insufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required under ordinary circumstances, and if he pursues a course of action to avoid an accident such as a person of ordinary prudence placed in a like position might choose, he is not guilty of negligence even though he did not adopt the wisest choice.
"If you find from the evidence that the plaintiff's decedent, Regal Deran Fowler, darted or ran suddenly on to the highway in front of the defendant's truck, provided there was no negligence on the part of the defendant, Robert O. Knight, while the truck operated by Knight was too close for Knight to avoid hitting the child in the exercise of ordinary care as defined in these instructions, the collision between the defendant's truck and the said Regal Deran Fowler would be an unavoidable accident and you should find the defendants not guilty."
Petitioners contend the questioned instruction was proper or, in the alternative, was harmless error because there is evidence in the record supporting the verdict on grounds independent of the doctrines of sudden emergency and darting. The appellate court will not substitute its judgment for that of the jury where there is, in the record, competent substantial evidence to support the verdict. Mr. Justice Hobson, in Glass v. Parrish,[3] discussed the rule:
"This Court has repeatedly pronounced, as has almost every court in the English speaking world, the rule that it will not substitute its judgment for that of a jury when the jury has resolved the conflicts in the evidence and has determined the issues of fact. An exception to this rule exists only in a case wherein there is no competent substantial evidence which sustains the jury's verdict or, stated in another form, when the verdict is against the manifest weight of the evidence. The pronouncement of the foregoing rule is consistently made, published and republished. Regretably, at times there may have been room for the feeling that all courts have not adhered to the rule as religiously as they have proclaimed it. It is possible too that appellate courts are not entirely free from the criticism that they have fortuitously lost sight *89 of the province of appellate courts. These courts were not established for the purpose of trying cases de novo on cold typewritten transcripts. An appellate court has the duty to consider and determine whether a case was tried in the nisi prius court under the principles, rules and regulations prescribed for its conduct. In other words, the appellate court should reverse judgments of trial courts in those cases only wherein it has been made to appear clearly that the prescribed procedure was not followed and that harmful error resulted from such obliquity."
The District Court accepted the testimony of the twelve-year-old sister and fifteen-year-old brother of the deceased child that, after the truck became visible, the deceased crossed and recrossed the road before the accident and rejected the evidence of the independent eye witness, Mrs. McIlvanie, that she did not see the child cross the road. The District Court also rejected the testimony of the defendant driver that, although he was watching the children, the deceased was not visible until he darted into the road some 100 to 200 feet ahead of the truck. There was evidence from which the jury could have found that the deceased was playing in the ditch alongside the road prior to the accident and was not visible to the driver before he darted in front of the truck.
The evidence, considered in the light favorable to the defendant-petitioner,[4] for whom the jury returned its verdict, shows the accident occurred on a country road in a sparsely settled rural area; that the driver did not exceed the speed limit and there was no impropriety in his driving. The evidence is that he was half way down one long hill when, a half mile to the southward, he saw fifteen-year-old Charles Fowler on a bicycle veering back and forth across the center of the road; that the driver immediately blew his horn and applied the brakes and, as he reached the bottom of the hill, blew his horn again; that his speed dropped to about forty-three miles per hour and he shifted to ninth gear, in which the maximum speed was forty-three miles per hour; that he crossed a level valley and, while so doing, saw there were children, all of whom were twelve or more years of age, standing eight to twelve feet back from the road 300 to 500 feet ahead; that when he blew his horn the children gathered back from the road; that he did not see the deceased at any time prior to his appearance on the road, probably because the child was in the ditch alongside; that he kept his eye principally upon the boy on the bicycle who was riding in the middle of the road; that he thought the children standing off the road obviously were not in a position of danger. The driver continued to lose speed, started up the hill and, when he came within 125 feet of the children, the deceased suddenly ran into the road ahead of the truck; the driver applied his brakes and cut sharply to the left and then, as the child continued, cut back to the right to go behind him, at which time the child reversed his direction and collided with the left front bumper or left side of the truck. The defendant driver testified he would have missed the child had the child not stopped and reversed direction. The evidence indicates the front end of the truck, a vehicle 72,000 pounds in weight, could not have traveled more than 138 to 139 feet from the point where the first brake marks appeared until it actually stopped.
The facts of this cause are substantially analogous to those in Klepper v. Breslin[5] from which the controverted instruction on sudden emergency and darting was taken. In the Klepper case the accident occurred *90 in a residential area posted with "Children  Slow" signs and the defendant driver, swerving to miss a dog, did not see the child dart out in time to avoid hitting it. The facts of that case more strongly favored the plaintiff than do those in the instant case. Mr. Justice Thornal holding the controversy was properly submitted to the jury with instructions on the doctrines of sudden emergency and darting, stated:[6]
"It is the contention of the appellant that if a `sudden emergency' existed it resulted from the negligence of the driver of the automobile and further that the accident could not have been `unavoidable' for the reason that in the view of the appellant the driver of the automobile had ample opportunity to see the dangerous situation long before the accident occurred and by the exercise of reasonable care and caution under all of the circumstances therein obtaining, particularly including the presence of small children in the area, could have avoided striking the little boy.
"While on the surface the position of the appellant might appear to have merit, it should be noted that the instructions to which he offers objection were cautiously framed on the condition that the driver of the automobile would have to be without negligence on her own part. It is clear from this record that the trial judge adopted the view that under all of the evidence the question of negligence, contributory negligence, and the related issues as to whether the driver of the automobile exercised due care appropriate to the particular circumstances, should be submitted to the jury as involving a factual conflict which could not otherwise be resolved as a matter of law."
We must agree with petitioner's contention that the instruction given in this cause, leaving it for the jury to resolve the question of the driver's negligence, upon which the application of the doctrines of sudden emergency and darting are predicated, was properly given. It is unnecessary to consider the other issues raised by the petitioner.
Accordingly, the decision of the District Court of Appeal, Second District, is quashed. Upon remand the District Court is authorized to consider and dispose of any alleged errors which were presented but not initially considered by it.
It is so ordered.
THOMAS, Acting C.J., and THORNAL, O'CONNELL and ERVIN, JJ., concur.
NOTES
[1] 162 So.2d 278 (Fla. 1964).
[2] Id., 162 So.2d at 281.
[3] 51 So.2d 717, 721 (Fla. 1951).
[4] Biltmore Terrace Associates v. Kegan, 130 So.2d 631, 633 (Fla.App.3rd 1961) cert. discharged 154 So.2d 825 (Fla. 1963): "In evaluating the evidence on appeal the test is whether this court, after viewing the case most favorably to the successful litigant, can say that the jury as reasonable men could not have found the verdict that was entered upon the evidence before them."
[5] 83 So.2d 587 (Fla. 1955).
[6] Id. at 589.